## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**UNITED STATES OF AMERICA**

      **Plaintiff,**

**v.**                                           **Case No: 6:17-cr-175-Orl-41EJK**

**WINTON GEORGE WILKS, IV**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This cause comes before the Court on the United States' Request for Revocation of Conditional Release pursuant to 18 U.S.C. § 4243(g) ("the Motion"), filed October 11, 2019. (Doc. 165.) Defendant has responded in opposition. (Doc. 166.) On October 17, 2019, the undersigned held an evidentiary hearing on the Motion in Defendant's presence. (Doc. 167.) For the reasons set forth below, I respectfully recommend that the Motion be granted.

### I.   BACKGROUND

On February 21, 2019, after a bench trial, the Court found Winton Wilks, IV, not guilty by reason of insanity on the charge of transmitting a communication containing a true threat to injure the person of another, in violation of 18 U.S.C. § 875(c). (Doc. 127.) Following the acquittal, Wilks was committed to the mental-health facility at FMC-Butner ("Butner") for a dangerousness evaluation pursuant to 18 U.S.C. § 4243. (*Id.*) After treatment at Butner, the parties agreed to the conditional release of Wilks to the custody of his brother on August 26, 2019. (Doc. 147.) The Court then entered its Order Setting Conditions of Release (Doc. 148), which was amended on August 29, 2019 (Doc. 149). Among the conditions were that Wilks was to have no contact with

the victim, G.J.K, or his family, and that he "participate in a mental health treatment program . . . and follow the probation officer's instructions regarding the implementation of this court directive." (*Id.* at 1–2.)

Upon his release, Dr. Kristina P. Lloyd, forensic psychologist at Butner, directed Wilks to continue with his prescribed medication of 600 mg of Lithium every day. Hr'g Tr. 20:20–23; 42:4–43:11; 49:17–20 (Oct. 17, 2019).[1] Dr. Lloyd made clear to Wilks that taking his medication was essential to his success upon release. Tr. 42:4–43:11. Wilks expressed to her that he understood this and would take the medication as directed. Tr. 43:7–11. Dr. Lloyd also discussed with Wilks that as part of his treatment, he needed to move on and stop contacting the victim and victim's family. Tr. 43:12–20. Dr. Lloyd also instructed Wilks to participate in both individual and group mental health counseling and to abstain from drugs and alcohol during his conditional release. Tr. 40:18–25; 42:22–43:11.

Alerson Jaquez, Wilks's probation officer, testified that he went over the conditions of release with Wilks on both August 27 and August 29, 2019. Tr. 3:11–4:5; 7:20–8:24. Specifically, Mr. Jaquez informed Wilks that he needed to take his medication as prescribed, and Wilks indicated that he understood this. Tr. 8:16–24. Mr. Jaquez also confirmed that Wilks had thirty days of his prescribed medication. Tr. 4:6–8.

On August 29, 2019, Mr. Jaquez informed Wilks that, as part of his conditions of release, he was prohibited from contacting the victim or the victim's family. Tr. 3:11–4:5; 7:20–8:15. Wilks became upset and told Mr. Jaquez that he was still in love with the victim's daughter and was willing to wait fifty years for her, referencing the biblical books of 1 Corinthians and Galatians, and the novel, *Love in the Time of Cholera*, by Gabriel Garcia Marquez. Tr. 4:9–5:11.

---

[1] For expediency, the Court cites to the rough draft of the October 17, 2019 hearing transcript.

Wilks relayed to Mr. Jaquez that he believed that the victim was just testing his love for the victim's daughter and that he was willing to wait for her as long as it took. Tr. 5:12–6:1. Mr. Jaquez testified that these statements concerned him in light of Dr. Lloyd's reports (Gov't Ex. 5, Doc. 137; Gov't Ex. 1, Doc. 143) indicating that when Wilks is in a manic phase, he becomes obsessive and highly spiritual. Tr. 6:2–7:19. Eventually, Wilks agreed that he would comply and not contact the victim or victim's daughter. Tr. 8:5–15. However, following this meeting, the victim's daughter, through a friend, contacted Deputy U.S. Marshal Angel Ayala and informed him that Wilks had contacted her through Instagram. Tr. 18:19–25.

After Deputy Ayala relayed this information, Mr. Jaquez reviewed a number of posts made on Instagram by Wilks under the username "@wwilks4" between September 1 and 2, 2019.[2] Gov't Ex. 4; Tr. 11:21–23. For example, Wilks posted the song "Ballad of a Southern Man" by Whiskey Myers with the caption, "My first rifle was a .270. I bought it myself. Weatherby Vanguard. I bought my glock 19 and colt AR-15 too. Come and take em." Gov't Ex. 4 at 5; Tr. 10:11–17. In another post with the same song, Wilks commented, ".270 Weatherby Vanguard. Leupold 3x16 scope. I never miss." Gov't Ex. 4 at 40; Tr. 12:8–16. Wilks also posted the song "I Could Kick Your Ass" by Justin Moore with the caption, "I promise i can kill your dad." Gov't Ex. 4 at 6; Tr. 11:7–14. He posted this song again with the caption, "Greg. Judge Smith. Larry." Gov't Ex. 4 at 29; Tr. 13:3–24. He also posted the song "Warning" by Incubus, with the caption, "You've been warned." Gov't Ex. 4 at 7; Tr. 11:18–20. Finally, Wilks posted the song "Beast" by Timeflies with the caption, "Careful playing with me @[the victim's daughter's name]." Gov't Ex. 4 at 1. He also tagged this same username in several other posts. *See, e.g.*, Gov't Ex. 4 at 2,

---

[2] Mr. Jaquez testified that he believed this to be Wilks's Instagram page because it contained several photos of Wilks. Tr. 9:9–16.

3, 4.

Just one week after his release from Butner, during the early morning hours of September 2, 2019, the Hillsborough County Sheriff's Office responded to a call from a neighbor that Wilks was banging on that neighbor's front door yelling that he wanted to buy the house. Gov't Ex. 3; Tr. 25:18–26:4. Chris Parmentier, a deputy with the Hillsborough County Sheriff's Office, testified that he arrived at a residence in Lithia, Florida to find Wilks sitting shirtless on a bench on the front porch of a home. Tr. 24:5–25:17. Wilks did not have any weapons on him and was compliant with Deputy Parmentier's requests for identification. *Id.* Wilks was placed in handcuffs and put in the back of the patrol car by another responding deputy, Deputy Thomas, for safety purposes while Deputy Parmentier spoke to the neighbor who had called the police. *Id.*

While in the back seat of the patrol car and handcuffed, Wilks stated that he wanted to fight Deputy Thomas and die so he could feel something. Tr. 26:5–27:6; 29:2–30:2. Wilks also said that he wanted to get his AR-15 so he could kill Deputy Thomas. Tr. 29:2–30:2. Deputy Thomas then told Wilks he was going to be held under Florida's Baker Act. Tr. 26:5–20. Wilks then began to bang his head repeatedly on the plexiglass separation in the patrol car. *Id.* Deputy Thomas told Wilks if he did not stop he would have to be hobble tied. *Id.* Wilks continued to bang his head, and Deputy Thomas proceeded to hobble tie him. *Id.* Deputies Thomas and Parmentier then transported Wilks to Gracepoint, a mental health facility in Tampa, Florida. Tr. 30:6–13.

Wilks was arrested on September 4, 2019 (Doc. 158) and is currently being detained pending the resolution of the instant Motion.

## II. STANDARD

In order to revoke a mental health acquittee's conditional discharge, 28 U.S.C. § 4243(g) requires the district court, upon

> probable cause to believe that the person has failed to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, ... [to] determine whether the person should be remanded to a suitable facility on the ground that, in light of his failure to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, his continued release would create a substantial risk of bodily injury to another person or serious damage to property of another.

28 U.S.C. § 4243(g). Thus, "[t]he plain and natural reading of this statute is that it empowers the court to revoke an acquittee's conditional discharge only if he has failed to comply with his regimen of treatment." *U.S. v. Crape*, 603 F.3d 1237, 1242 (11th Cir. 2010). If found to be in noncompliance with the regimen, the court must then "assess the acquittee's dangerousness." *Id.*

### III.  DISCUSSION

#### A.  Wilks's Compliance with His Prescribed Regimen of Treatment

Based upon the testimony presented at the evidentiary hearing, I find that probable cause exists to conclude that Wilks failed to comply with his prescribed regimen of medical treatment following his release from Butner on August 26, 2019. 28 U.S.C. § 4243(g). Probable cause "is not reducible to 'precise definition or qualification.'" *Florida v. Harris*, 568 U.S. 237, 243 (2013), (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). Rather, it is a flexible and common-sense standard, not subject to a bright-line test. *Id.* In essence, the Supreme Court requires that a "fair probability" exist "on which reasonable and prudent [people,] not legal technicians, act." *Id.* (internal quotation marks omitted).

Upon his release from Butner, Dr. Lloyd prescribed that Wilks take 600 mg of Lithium each day. Tr. 20:20–23; 49:17–20. Dr. Lloyd testified that this medication was essential to a successful treatment plan for Wilks, and that if he did not comply by taking his prescribed medication each day, he would decompensate rapidly. Tr. 42:4–43:11; 51:23–52:4. Upon his release from Butner, Wilks indicated to Dr. Lloyd that he understood he was to take his medication

daily. Tr. 42:4–43:11 Mr. Jaquez confirmed that he told Wilks that he was to take his medication as prescribed as part of his conditions of release. Tr. 20:20–21:16.

Dr. Lloyd is familiar with Wilks's behavior both on and off his medication. At the time Wilks presented to Butner in April, he was held in a secure environment due to his decompensated mental state. Tr. 37:2–39:18; *see also* Gov't Ex. 5, Doc. 137. Dr. Lloyd characterized his presentation at the time as delusional, manic, euphoric, uncooperative, and with an inability to engage in logical conversation. *Id.* Over the following weeks he, among other things, refused at times to wear clothing, smeared food all over his room, and refused to take his medication. *Id.* He was also paranoid and threatening to staff. *Id.* Over time, though, Wilks improved, and by July 2019, he was consistently taking his medication, which significantly improved his presentation. Tr. 39:19–40:17; *see also* Gov't Ex. 1, Doc. 143. On medication, he was able to follow rules, stopped threatening staff, was able to engage in logical conversation, knew that he needed to take his medication, and stopped trying to get his family to contact the victim and victim's daughter. *Id.*

Dr. Lloyd stated that she reviewed the records regarding Wilks's behavior during his interaction with the Hillsborough County Sheriff's Office on September 2, 2019, as well as his Instagram posts following his release from Butner. Tr. 46:16–47:15. Dr. Lloyd testified that while she had not seen Wilks in person for treatment since his conditional release on August 26, 2019, based on her medical training and experience, his behavior and statements made are consistent with his being unmedicated. Tr. 46:16–48:9. She stated that if Wilks had been exhibiting this behavior prior to his release, she would not have recommended him for conditional discharge. Tr. 48:11–19.

Dr. Lloyd was clear that, while it was possible that Wilks could have had the manic episode

on September 2, 2019, while he was taking his medication as prescribed, it was not *probable*. Tr. 49:21–25; 50:10–51:17. The medication and dosage she prescribed Wilks was adequate as of the date of his release on August 26, 2019. *Id.* And it is unlikely that by September 2, 2019, just one week later, Wilks's prescribed medication regimen would have become so incorrect as to be ineffective at managing the symptoms of his mental illness. *Id.* Rather, this type of decompensation while still on medication would take months, not days. *Id.* Further, Dr. Lloyd stated that Wilks decompensates very quickly when not taking his medication. *Id.* Ultimately, Wilks's behavior during this time frame was consistent with his not taking his medication, which explains his rapid deterioration following his conditional discharge. Tr. 51:19–52:4. Based on Dr. Lloyd's testimony and the testimony of Deputy Parmentier concerning Wilks's behavior on September 2, 2019, I find probable cause to indicate that Wilks failed to comply with his regimen of treatment by not taking his medication as prescribed while on conditional release.

### B. Wilks's Dangerousness

Further, I find that Wilks's continued release would create a substantial risk of bodily injury to another person. 28 U.S.C. § 4243(g). Within one week of being released from Butner, Wilks had the September 2, 2019, incident with the Hillsborough County Sheriff's Office, resulting in his being involuntarily committed pursuant to the Baker Act. Gov't Ex. 3. During that incident, Wilks was banging on the door of a neighbor's house at 4 a.m. yelling that he was going to buy the house. *Id.* Subsequently, upon being placed in handcuffs, Wilks threatened Deputy Thomas, stating that he wanted to get his AR-15 and kill Thomas. *Id.* Taken in conjunction with Wilks's Instagram posts referencing his AR-15 and other weapons, Gov't Ex. 4, Wilks appears to have the desire and means to cause harm to another. Additionally, Wilks wrote several Instagram posts following his release which contained threats, such as "I promise i can kill your dad." Gov't Ex. 4

at 6.

Moreover, the Court ordered Wilks not to have direct or indirect contact with the victim's daughter, Doc. 149, and Dr. Lloyd testified that she advised Wilks to stop attempting to contact the victim's daughter as part of his mental health treatment plan, Tr. 43:12–20. But Mr. Jaquez testified that the victim's daughter received Wilks's social media posts, which contained references to her name. Tr. 18:19–25. Taken together, I find that Wilk's continued release creates a substantial risk of bodily injury to another, and his conditional discharge should be revoked.

## IV.   RECOMMEDATION

Upon consideration of the foregoing, I respectfully recommend that the United States' Request for Revocation of Conditional Release under 18 U.S.C. § 4243(g) (Doc. 165) be **GRANTED** and that Defendant be **REMANDED** to the custody of the Bureau of Prisons for further evaluation and treatment.

### NOTICE TO PARTIES

A party has **fourteen days** from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on October 23, 2019.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

- 9 -

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties